SOUTHWICK, P.J.,
for the Court:
¶ 1. Jason Hudson was convicted of murder by a Lawrence County jury. He appeals alleging that there was insufficient evidence to permit the verdict of the jury, or else that it was against the great weight of the evidence. Hudson also alleges that his trial counsel was ineffective because he failed to offer an instruction to the court concerning circumstantial evidence. These assignments of error have no merit and we affirm the conviction.
FACTS
¶ 2. During the evening of November 1, 1996, Jason Hudson, Shonda Slay, and several other people were at the apartment that Hudson shared with Slay and her sister, Shannon. They were visiting, playing cards and drinking alcoholic beverages. At one point, Hudson left the apartment with a former girlfriend, who at the time was pregnant with Hudson’s child. Hudson testified that Slay later telephoned him and told him to come back to the apartment.
¶ 3. When Hudson returned shortly after midnight, he and Slay went into her bedroom. Not long after the door closed to *584 the bedroom, Michael Jackson, who was visiting Slay’s sister, heard a loud clap come from inside the bedroom. Jackson and Shannon Slay both testified that the sound was similar to that of a hardcover book falling on the floor. Jackson knocked on the door to Slay’s room to inquire about the noise. Hudson'came to the door, partially opened it and said that the noise had come from in the bedroom, then shut the door again.
¶ 4. Jackson then went into the living room of the apartment. Soon after, Hudson came out of the bedroom and several times told Jackson “I shot her.” The commotion apparently woke Shannon Slay, who was sleeping in another bedroom. When Shannon attempted to go into her sister’s bedroom, Hudson physically prevented her and said that she could not take it.
¶ 5. In somewhat confusing testimony, Jackson stated that both he and Shannon left the apartment to call for help. Jackson was standing outside when Hudson left the apartment and asked for the keys to Jackson’s car. Jackson testified that he thought that Hudson might still have the gun and so he threw his keys to Hudson. Hudson took Jackson’s car and drove to his aunt’s house in Lincoln County where he turned himself into the police.
¶ 6. Shonda Slay was found lying on the foot of her bed with a contact gunshot wound to her left temple. A .22-caliber handgun was found hidden in the closet of Slay’s bedroom and was later identified as the weapon that killed her. Hudson was arrested and indicted for the murder of Shonda Slay and for robbery for taking Jackson’s automobile. After the trial court reduced the robbery charge to grand larceny, the jury returned a verdict of guilty on murder and not guilty on grand larceny.
DISCUSSION

I. Defendant’s testimony was credible and unimpeached

¶7. Hudson urges that because he was the only witness to what transpired in Slay’s bedroom, and his version of the cause of Slay’s death is reasonable and not substantially contradicted by the evidence, the trial court should have directed the verdict in his favor. The principle is this:
It has been for some time the established rule in this state that where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by physical facts or by the facts of common knowledge.
Weathersby v. State, 165 Miss. 207, 209, 147 So. 481 (Miss.1933). However, where the physical facts and circumstances in evidence materially contradict the defendant’s version of what happened, the trial court is not required to direct a verdict. Wetz v. State, 503 So.2d 803, 809 (Miss.1987). Therefore, when there is a contradiction between the physical evidence and the defendant’s version of what happened, the matter properly sits before the jury as a question of fact.
¶ 8. Hudson testified that he was laying on the foot of the bed when Slay threatened him with the gun. He allegedly managed to grab Slay’s hands. At some point during the struggle the gun fired and Slay fell on the bed. Hudson testified that he did not realize that Slay had been shot until after Jackson inquired about the noise.
¶ 9. In his written statements to the police Hudson gave a slightly different version of what happened, claiming that he had pushed Slay onto the bed and then the gun had fired. While at his aunt’s house following the shooting, Hudson gave a third account. Linda Winters, Hudson’s aunt, testified Hudson told her that Slay originally threatened him while he was sitting on the sofa, which was not in the bedroom.
*585 ¶ 10. Additionally, testimony by Dr. Steven Hayne, who performed the autopsy on Slay, indicated that the gunshot wound occurred while the gun was in contact with Slay’s temple. This resulted in severe gun powder burns on Slay’s head. There were also powder burns on the back of Slay’s left hand, indicating a defensive posture. Importantly there were no other traces of gun powder on either of Slay’s hands. This would show that Slay was not holding the gun when it fired, as Hudson testified. Dr. Hayne also testified that the gunshot wound was found to be on a downward angle and that Slay had injuries consistent with her having fallen on her face and chest about the same moment that she was shot.
¶ 11. While it is undisputed that Hudson was the only witness to Slay’s death, his version of events is reasonable only in the abstract. His story is materially contradicted by both his own alternative statements as well as by the physical evidence. A reasonable, hypothetical juror could reach a verdict of guilty. The jury chose not to accept Hudson’s version of events. The trial court did not err in refusing to direct the verdict.

II. Sufficiency of evidence

¶ 12. Even if Weathersby does not apply, Hudson argues that the evidence was still insufficient to support the verdict. In Hudson’s view, the State did not prove beyond a reasonable doubt that he killed Slay with deliberate design, not in necessary self-defense and without authority of law.
¶ 13. Hudson alleges that the State did not carry its burden because it faded to show deliberate design or malice aforethought. However, the evidence showed that Slay was killed with a .22-caliber handgun at a point in time when only Hudson had the opportunity to kill her. Additionally, deliberate design and malice aforethought may be inferred from the use of a deadly weapon. Tran v. State, 681 So.2d 514, 516 (Miss.1996). To undermine that presumption, at best there is Hudson’s uncorroborated testimony alleging accident, but the physical evidence is inconsistent with that.
¶ 14. When examining a challenge to the sufficiency of the evidence, this court considers all the evidence in the light most favorable to the verdict, accepting credible evidence consistent with guilt as true, giving the prosecution the benefit of all favorable inferences. We may reverse only where the evidence so considered is such that reasonable and fair-minded juror could only find the accused not guilty. McRee v. State, 732 So.2d 246, 248-49 (Miss.1999). We find no basis to reverse the jury’s verdict.

III. Ineffective assistance of counsel

¶ 15. Hudson alleges that he was deprived of effective assistance of counsel at trial because his counsel submitted an inadequate jury instruction on circumstantial evidence and did not argue the issue at closing. When there is no eyewitness testimony nor a confession to prove at least in part the gravamen of the offense, the accused is entitled to a circumstantial evidence instruction upon request. By this, the jury would be told that they must find that each element of the offense has been established beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. Mack v. State, 481 So.2d 793, 794 (Miss.1985).
¶ 16. Hudson requested and was granted the following instruction:
The Court instructs the Jury that regardless of how much evidence the State has presented, if you are convinced that the State has failed to prove that Jason Hudson is guilty of Count One of murder or manslaughter beyond a reasonable doubt and to the exclusion of any other reasonable hypothesis consistent with his innocence, it is your sworn duty to find him not guilty.
The Court further instructs the Jury that you cannot convict the Defendant on speculation, guess, probability or suspicion, but that the Defendant’s guilt *586 must be proven beyond a reasonable doubt to the exclusion of every reasonable hypothesis consistent -with his innocence.
We find no defect in this instruction, even if it does not use the superfluous label of “circumstantial evidence” within it. Whether Hudson’s counsel made as much of the issue in his closing argument as Hudson now desires, he urged the jurors not to find guilt based “on speculation, on guess, on probability, on possibility or suspicion.” He tried to explain alternative explanations for the physical evidence. That is precisely a circumstantial evidence issue, namely, the showing that other innocent and reasonable explanations cannot be excluded.
¶ 17. We find no ineffective assistance of counsel.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF LAWRENCE COUNTY ON CHANGE OF VENUE TO LAMAR COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LAWRENCE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.